UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

                                                                                 **DECISION AND ORDER**
                                                                                               09-CR-331A

        v.

MICHAEL BOBBITT,

                              Defendant.

---

## I. INTRODUCTION

Pending before the Court is a motion (Dkt. No. 928) by defendant Michael Bobbitt for reconsideration of detention and release on reasonable bail conditions. Defendant's new counsel urges the Court to revisit certain detention factors, such as the absence of violent acts in the allegations of the Fourth Superseding Indictment; his denial of any attempt to escape arrest and his alternative explanation for what the Government perceived as an attempt to escape when arrested; and the Government's alleged exaggeration of his history of parole and probation revocations. Besides the detention factors, however, defendant notes that he has been in continuous federal custody since October 5, 2010—a span of over 32 months—and that further pretrial detention would be punitive and would constitute a due-process violation. The Government opposes release, stressing that much of the delay in this case resulted from defense requests for extensions of time and defendant's request to change appointed

counsel, a request that the Court granted on April 5, 2013.  The Government also emphasizes that due-process analysis follows no bright-line rules as to when detention becomes excessive.

The Court held oral argument on June 13, 2013.  For the reasons below, the Court denies the motion but without prejudice to revisit detention if the Government has not arranged for defendant's trial to begin on or before January 15, 2014.

## II. BACKGROUND

### A. *History of Charges Against Defendant*

The docket for this case contains numerous discussions of the charges facing this defendant and other defendants.  The Court will not repeat those discussions beyond noting very generally that the case concerns charges that defendant and others operated and supported a violent street gang in the City of Buffalo named the Tenth Street Gang.  The allegations across all defendants include allegations of murders, attempted murders, assaults, drug sales, and firearm possession.  On September 15, 2010, the Government filed a Second Superseding Indictment in this case (Dkt. No. 69) that added defendant for the first time and contained two counts against him.  In Count One, the Government accused defendant of racketeering conspiracy in violation of 18 U.S.C. § 1962(d).  The Government further alleged the following overt acts by defendant in furtherance of the conspiracy:

1. On or about July 23, 2006, defendants FORD and MICHAEL BOBBITT trespassed in the upper apartment of 257 Whitney Place, which apartment contained a box, plate, and a razor blade containing cocaine residue, in the neighborhood controlled by the 10th Street gang. (Dkt. No. 69 at 16.)

2. On or about August 20, 2008, defendant MICHAEL BOBBITT possessed a Sturm Ruger 9mm semi-automatic pistol and a Kel-Tec 9mm semi-automatic pistol in Buffalo, New York. (*Id.* at 21.)

3. On or about July 11, 2009, defendants FORD, MICHAEL BOBBITT, and BRANDON BOBBITT congregated outside of a corner store located at 225 Virginia Avenue, Buffalo, New York, in the neighborhood controlled by the 10th Street gang, at which time defendant BRANDON BOBBITT was in possession of a marijuana cigarette and defendant FORD was in possession of approximately $896 U.S. currency. (*Id.* at 23.)

4. On or about August 23, 2009, defendants MICHAEL BOBBITT and BRANDON BOBBITT possessed 22 small plastic packages ("corners") containing a quantity of cocaine at 240 Niagara Street, in the neighborhood controlled by the 10th Street gang. (*Id.* at 24.)

5. On or about November 30, 2009, immediately prior to PEEBLES' possession of a quantity of cocaine base, defendants FORD, MICHAEL BOBBITT, and BRANDON BOBBITT congregated on the corner of Whitney Place and Virginia Street and, at that time, defendant FORD was in possession of over $600 U.S. currency. (*Id.* at 27.)

The Government also alleged, as a special factor for Count One, that defendant "did knowingly, willfully, and unlawfully, combine, conspire, and agree together and with others, known and unknown, to commit the following offenses, that is, to possess with intent to distribute, and distribute, 50 grams or more of a mixture

and substance containing cocaine base, and 5 kilograms or more of a mixture and substance containing cocaine, Schedule II controlled substances, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A)." (*Id.* at 32–33.)

In Count 46 of the Second Superseding Indictment, the Government charged defendant and others with a conspiracy, under 21 U.S.C. § 846, "to possess with intent to distribute, and distribute, 50 grams or more of a mixture and substance containing cocaine base, a Schedule II controlled substance, 5 kilograms or more of a mixture and substance containing cocaine, a Schedule II controlled substance, and a quantity of a mixture and substance containing marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 841(b)(1)(D)." (*Id.* at 100.)

On April 28, 2011, the Government filed a Third Superseding Indictment (Dkt. No. 226) against defendant and others. All of the previous charges against defendant remained, in renumbered Counts 1 and 56, but the Government added a charge (Count 57) of possession of firearms in furtherance of drug crimes in violation of 18 U.S.C. §§ 924(c)(1) and 2. The Government filed a Fourth Superseding Indictment on February 2, 2012. (Dkt. No. 408.) The Fourth Superseding Indictment added other defendants but did not change the charges against this defendant.

## B. *Discovery and Course of This Case*

During the course of this case, both defendant and the Government made decisions that contributed to the length of defendant's pretrial detention. Defendant filed one motion for an extension of time to file pretrial motions on January 14, 2011 (Dkt. No. 166). The Third and Fourth Superseding Indictments required new arraignments and a new pretrial schedule for all defendants. Once all defendants had the extensions of time that they requested and filed their pretrial motions, the Government requested extra time to respond to the motions (Dkt. No. 582). On November 8, 2012, the Court held a status conference to address a letter that defendant wrote complaining about his legal representation. On November 16, 2012, defendant filed a motion for joinder (Dkt. No. 660) that included a joinder of her request to dismiss the case on speedy trial grounds; defendant asserted that he "has not filed any motions under the First, Second and Third Indictments and has been ready for trial at all times." (*Id.* at 4.) On February 7, 2013, during omnibus evidentiary hearings, the Court again addressed the relationship between defendant and counsel (*see* Dkt. No. 787). Defendant complained about his now-former counsel again on February 12, 2013 (Dkt. No. 799). Another complaint from defendant on March 26, 2013 (Dkt. No. 850) led to a status conference that counsel failed to attend (Dkt. No. 859), prompting the Court to appoint now-current counsel on April 5, 2013 (Dkt. No. 871). At a status conference on April 12, 2013 (Dkt. No. 875), new counsel

confirmed that he received defendant's file from former counsel but needed time to review discovery. The Court allowed new counsel until June 12, 2013 to file any additional pretrial motions that he considered appropriate.

### C. *Pending Bail Motion*

Defendant filed the pending motion for reconsideration of bail on May 31, 2013. Defendant revisits several arguments from his original detention proceedings and then adds an argument about due process. With respect to prior proceedings, defendant highlights that the charges against him did not change in the last indictment and that none of the charges against him describe acts of violence. Defendant denies that he attempted to flee when police arrested him; he claims instead that he knew that police were looking for him and that, when his house was surrounded, he threw open the window and stuck his head and hands out to show that he was unarmed. Defendant argues that the weapons imputed to him were found in an apartment that his sister and her baby's father occupied. Defendant asserts that he has only one parole violation and only one prior firearm offense on his record, contrary to suggestions made at the original detention proceedings. As for due process, defendant argues that his detention of over 32 months is out of proportion to the nature of the charges against him, which are far less serious than the charges against co-defendant Matthew Smith. Defendant mentions Matthew Smith because the Court denied Smith's bail reconsideration motion in part based on the severity of the charges

6

against him.  (*See* Dkt. No. 841.)  Defendant concludes by proposing that he can stay with his sister and have a telephone line installed there for electronic monitoring.  Defendant proposes confinement to a halfway house as an alternative living arrangements.  Finally, defendant suggests that he may have relatives who can come forward to execute a signature bond in lieu of posting assets, given their financial hardship.

The Government opposes each aspect of defendant's motion.  The Government stands by the information proffered during the original detention proceedings and objects to defendant's attempts to alter the record of those proceedings without filing a sworn affidavit that would create a factual dispute, particularly with respect to the issue of evading arrest.  The Government reemphasizes that defendant faces serious charges related to a violent street gang, even if the charges against this particular defendant are not quite as severe as the charges against other defendants.  Finally, the Government rebuts defendant's argument about due process by noting that defendant requested at least one extension of time and also requested a change of counsel during the course of the case.  Given the breakdown of communication with former counsel and the time that new counsel needed to catch up with ongoing proceedings, the Government objects to being charged with any delay that stemmed from extensions of time for the change of counsel.  The Government also emphasizes that the Second Circuit follows no bright-line rule regarding length of detention.

7

## III. DISCUSSION

### A. *Reconsideration of Bail Generally*

Putting aside the issue of duration of detention, which receives separate treatment below, the Court will begin assessing the pending motion by addressing whether any other circumstances in the case have changed since the last order of detention. Once the Court has issued a detention order, it may reconsider that order and reopen the detention hearing "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). "New and material information for Section 3142(f)(2)(B) purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event." *U.S. v. Jerdine*, No. 1:08 CR 00481, 2009 WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009) (citation omitted). Where evidence was available to defendant at the time of the hearing, the hearing will not be reopened. *See U.S. v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991); *U.S. v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989).

Here, little substantive information has changed since defendant's original detention proceedings. The Third Superseding Indictment added a firearm

8

charge that carried over to the Fourth Superseding Indictment.  The omnibus evidentiary hearings that the Court held earlier this year did not surprise defendant or the Court with any new information but did bring forth testimony that would appear to implicate defendant in racketeering activities should he proceed to trial.  Defendant disputes the circumstances of his arrest but did not request a hearing about those circumstances; in any event, other factors continue to weigh in favor of detention.  Defendant continues to face serious charges, even if his charges are not quite as severe as the charges against some of his co-defendants.  Defendant has a lengthy criminal record stretching back about a decade that includes violent felony offenses, domestic incidents, and two violations of either parole or bail.  Additionally, defendant when arrested had three active orders of protection against him and no permanent address; he advised federal probation officers at the time that for about two weeks before his arrest, he was staying wherever anyone would let him spend the night.  Other than attempting to challenge the allegations of fleeing arrest, defendant has presented no new information that would ameliorate the numerous reasons counseling against release.  Under these circumstances, the Court finds a substantive basis for defendant's continued pretrial detention.

    B.    *Analysis of Due Process*

Having assessed the substantive factors affecting defendant's detention, the Court now turns to defendants due-process challenge.  "Simply put, even

though substantive grounds exist for detention, has defendant's detention grown so long that his due-process rights override those substantive grounds?" *U.S. v. Rodriguez*, No. 09-CR-331, 2012 WL 6690197, at *9 (W.D.N.Y. Dec. 21, 2012) (Scott, *M.J.*) (citing *U.S. v. Ojeda Rios*, 846 F.2d 167, 168–69 (2d Cir. 1988)). Answering that question requires careful consideration of constitutional and Second Circuit criteria. "The government may detain a defendant prior to trial consistent with the Due Process Clause of the Fifth Amendment so long as confinement does not amount to punishment of the detainee. Absent an expressed intention to punish, whether detention constitutes impermissible punishment or permissible regulation turns on whether the government has a nonpunitive reason for detention and whether detention appears excessive in relation to the nonpunitive purpose. Pretrial detention of a defendant, when of reasonable duration, serves important regulatory purposes, including the prevention of flight and the protection of the community from a potentially dangerous individual. However, when detention becomes excessively prolonged, it may no longer be reasonable in relation to the regulatory goals of detention, in which event a violation of due process occurs." *U.S. v. Millan*, 4 F.3d 1038, 1043 (2d Cir. 1993) (internal quotation marks and citations omitted). "To determine whether the length of pretrial detention has become constitutionally excessive, we must weigh three factors: (i) the length of detention; (ii) the extent of the prosecution's responsibility for the delay of the trial; and (iii) the strength of the

evidence upon which the detention was based, that is, the evidence concerning risk of flight and danger to the safety of any other person or the community." *Id.* at 1043 (internal quotation marks and citations omitted). The Court will address each of these factors in turn.

1. *Length of Detention*

The first factor affecting a possible due-process violation is the total length of defendant's pretrial detention, regardless of any breakdown of responsibility that occurs later in the analysis. *See U.S. v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986) (beginning due-process analysis by "[f]ocusing first on the duration of confinement" and acknowledging "the total time the defendants have been in pretrial detention"). Courts that measure total pretrial detention count actual detention plus likely prospective future detention; they ignore possible future detention that is only speculative. *See id.* (assessing future scheduling that is "without speculation"); *see also Millan*, 4 F.3d at 1044 ("In weighing potential future detention, however, we take into account non-speculative aspects of future confinement.") (internal quotation marks and citations omitted). "While the length of pretrial detention is a factor in determining whether due process has been violated, the length of detention alone is not dispositive and will rarely by itself offend due process." *U.S. v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000) (internal quotation marks and citations omitted).

Here, the total length of defendant's pretrial detention is stretching beyond the bounds of current Second Circuit precedent. As the Court noted in *Rodriguez*, current Second Circuit case law addressing due-process violations has addressed detention periods lasting as long as about 33 months under different circumstances. *See Rodriguez*, 2012 WL 6690197, at *11 (summarizing Second Circuit cases). Defendant has been in continuous federal custody since October 5, 2010 a length of over 32 months as of this writing. While the Court wants to avoid any formulaic approach to due-process analysis, it does find this length of detention troubling, especially given that defendant still does not have a trial date. That said, defendant's situation under this first factor of analysis differs in two ways from the situation of former co-defendant Rodriguez, who had somewhat similar charges. At the time of the *Rodriguez* decision, Rodriguez's pretrial detention had reached 38 months, with the Court estimating that the detention would exceed 50 months by the time Rodriguez received a trial. In contrast, this defendant's ongoing detention is a little shorter, with a trial likely to occur soon. Judge Arcara already has scheduled the first trial in this case for September 10, 2013. Defendant is not in the first group of defendants that the Government has proposed putting on trial in September (*see* Dkt. No. 932), but if that first trial lasts no more than about 4–6 weeks then defendant, who is in the Government's proposed second group, likely would go to trial before the end of the year.

Under these circumstances, the first factor in the due-process analysis favors defendant, but not nearly in the way that it favored Rodriguez. Unlike Rodriguez, defendant has faced a shorter length of detention and has much more certainty about when he will go to trial.

2. *Responsibility for Delay*

Next, the Court will consider the extent to which the Government is responsible for the time that defendant has spent in pretrial detention. When looking for "responsibility," courts will consider any conduct intended to cause delay. Courts also will charge to defendants time lost to motion practice that could have proceeded in a more efficient or practical way. *Cf. Gonzales Claudio*, 806 F.2d at 341 ("[T]here is some basis for believing that defense counsel could have proceeded more expeditiously by taking a less fragmented approach to pretrial maneuvering."). In between, though, lies a range of case-management decisions by the Government that warrant at least some of the respect afforded to prosecutorial discretion. *See U.S. v. Orena*, 986 F.2d 628, 631 (2d Cir. 1993) ("[W]e decline to adopt a rule that would deter the government from seeking joint trials (or consenting to severance) as a means of economizing judicial and other resources."). Courts generally avoid micromanaging cases, but respect for prosecutorial discretion does not mean that the Government always should receive complete absolution for decisions whose impact on pretrial detention is foreseeable.

Here, both sides have made decisions over the course of this litigation that have prolonged defendant's pretrial detention and have neutralized this factor in the due process analysis. The Government superseded the indictment twice after bringing defendant into the case, the most recent indictment changing none of the charges against defendant. The Government also asked for extra time to respond to the various pretrial motions. Balanced against the Government's conduct, defendant also has asked for extra time and, more importantly, requested a change of counsel. The change of counsel should not count entirely against defendant because the Court agreed that a change was necessary, but the change unavoidably required some delay to allow due counsel to assess the case for himself. The Government had nothing to do with any delay stemming from the change of counsel. The Court thus finds that this factor in the analysis favors neither party.

        3.    *Strength of the Proof*

As noted above and without infringing on the presumption of innocence, the final factor in the due-process analysis requires the Court to consider the strength of the Government's evidence that defendant poses a risk of flight, a danger to the community, or both. The details of the Court's analysis appear earlier in this Decision and Order. In short, defendant continues to face serious drug, firearm, and racketeering / racketeering-conspiracy charges that, apart from this due process analysis, would trigger a statutory presumption in favor of

14

detention.  The evidence that the Government would present at trial appears to be strong and was aired openly during the omnibus evidentiary hearings.  Notably, the transcripts of the omnibus evidentiary hearings were available immediately, yet defendant has not pointed to any developments from the hearings that would indicate that the Government's case has weakened since the original detention proceedings.  That is not to say that defendant bears any burden of proof with respect to the strength of the Government's case; the Court simply points out that two weeks of evidentiary hearings earlier this year appear not to have given it any reason to revisit, for bail purposes, the nature of the case against defendant.  Defendant also has a lengthy criminal history that includes a parole and bail violation, multiple orders of protection, and unstable residences.  Ample reasons thus exist to believe that defendant has a motive to flee and would pose a danger to the community despite lifelong ties to the Western New York area.  This final factor in the due process analysis thus favors the Government.

     In the end, then, a review of the due-process factors shows one factor in favor of defendant, one factor in favor of the Government, and one factor that favors neither party.  Given that defendant likely will go to trial in a few months, prudence warrants a measured approach.  The Government needs to bring this defendant to trial soon, and the Court finds that January 15, 2014 is a reasonable control date for the second group of defendants who will receive a trial.  If the

Government does not take all reasonable measures to arrange for defendant's trial to begin by that time then defendant may revisit the issue of detention and should be prepared to discuss whether some or all of the bail conditions proposed in *Rodriguez* would be appropriate.

**IV.    CONCLUSION**

For all of the foregoing reasons, the Court denies defendant's motion (Dkt. No. 928), but without prejudice to reconsider if the Government does not arrange for defendant's trial to begin on or before January 15, 2014.

SO ORDERED.

                                                */s Hugh B. Scott*
                                         HONORABLE HUGH B. SCOTT
                                         UNITED STATES MAGISTRATE JUDGE

DATED: June 17, 2013